# 24-773(L)

## 24-1497(CON)

### United States Court of Appeals
*for the*
### Second Circuit

THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,
*Plaintiff-Appellee,*

– v. –

UNITED STATES OF AMERICA,
*Intervenor-Plaintiff,*

– v. –

ARM OR ALLY, LLC, BLACKHAWK MANUFACTURING GROUP, INC., AKA 80
PERCENT ARMS, INC., AKA 80 PERCENT ARMS, SALVO TECHNOLOGIES, INC., AKA
80P BUILDER, AKA 80P FREEDOM CO., BROWNELLS, INC., AKA, BROWNELLS,
AKA BOB BROWNELLS, GS PERFORMANCE, LLC, AKA GLOCKSTORE, AKA GSPC,
KM TACTICAL, PRIMARY ARMS, LLC., RAINER ARMS, LLC, ROCK SLIDE USA,
LLC,
*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK (No. 1:22-cv-06124-JMF)

## DEFENDANTS-APPELLANT'S REPLY BRIEF

David H. Thompson
Brian W. Barnes
Athanasia O. Livas
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036
(202) 220-9600
dthompson@cooperkirk.com

*Attorneys for Defendants-Appellants Brownells, Inc., a/k/a Brownells or Bob
Brownell's; Salvo Technologies, Inc., a/k/a 80P Builder or 80P Freedom Co.;
Primary Arms, LLC; and Rock Slide USA, LLC
Additional Counsel listed on Inside Cover*

V.R. Bohman
Cameron Schlagel
**SNELL & WILMER L.L.P.**
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, NV 89169
702-784-5200
Fax: 702-784-5252
vbohman@swlaw.com
cschlagel@swlaw.com
*Attorneys for Blackhawk*
*Manufacturing Group, Inc.*

Jonathan Y. Ellis
**MCGUIREWOODS LLP**
501 Fayetteville St.
Suite 500
Raleigh, NC 27601
919-755-6688
jellis@mcguirewoods.com

Jason Cowley
**MCGUIREWOODS LLP**
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
704-343-2030
jcowley@mcguirewoods.com

Jean Paul Bradshaw, II
**LATHROP GPM LLP**
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2612
816-460-5507
Fax: 816-292-2001
jeanpaul.bradshaw@lathropgpm.com

Steven Jay Harfenist
**HARFENIST KRAUT &**
**PERLSTEIN, LLP**
3000 Marcus Avenue
Suite 2e1
Lake Success, NY 11042
516-355-9600
Fax: 516-355-9601
sharfenist@hkplaw.com
*Attorney for Arm or Ally LLC*

Ryan Lawrence Erdreich
Richard Frederick Brueckner, Jr.
**PISCIOTTI LALLIS ERDREICH**
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
973-245-8100
rerdreich@pisciotti.com
rbrueckner@pisciotti.com
*Attorneys for GS Performance, LLC,*
*a/k/a Glockstore or GSPC*

Christopher Adams
**GREENBAUM ROWE SMITH &**
**DAVIS**
**NEW JERSEY**
331 Newman Springs Road
Building 1, Suite 122
Red Bank, NJ 07701
732-476-2692
cadams@greenbaumlaw.com

Shoshanah Mae Shanes
**LATHROP GPM LLP**
7701 Forsyth Blvd.
Suite 500
Clayton, MO 63105
224-456-7099
shoshanah.shanes@lathropgpm.com

Tobias Jacob Fischer
**MCGUIREWOODS LLP**
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2143
tfischer@mcguirewoods.com
*Attorneys for KM Tactical*

Jessica Maria Carroll
**GREENBAUM ROWE SMITH &
DAVIS**
75 Livingston Ave.
Roseland, NJ 07068
973-577-1910
Fax: 973-577-1911
jcarroll@greenbaumlaw.com
*Attorneys for Rainier Arms, LLC*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES......................................................... ii

INTRODUCTION ....................................................................1

ARGUMENT ..........................................................................2

I.  Defendants' Products Cannot Properly Be Defined as Firearms under the Gun Control Act....................................................................2

    A.  The State Has Not Established that Component Parts of Frames or Receivers Only Made Functional by the Labor of Others Are Themselves "Firearms" under Federal Law. .........................................2

    B.  The State's Remaining State and Local Law Allegations Do Not Preclude Reversal. ....................................................................8

II.  If Non-Functional Component Parts of Frames or Receivers Are Firearms, Most Defendants Are Immune from Suit under the PLCAA..........9

    A.  The State's Suit Is Barred by the PLCAA.............................................9

    B.  The Predicate Exception Does Not Apply...........................................15

III.  This Court Has Appellate Jurisdiction...........................................20

    A.  This Court Should Accept the District Court's Section 1292(b) Certification. ........................................................................20

    B.  This Court Also Has Jurisdiction Under the Collateral Order Doctrine. ............................................................................23

CONCLUSION .....................................................................28

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                   <u>Page</u>

*Buono v. Tyco Fire Prods., LP*,
   78 F.4th 490 (2d Cir. 2023) ................................................................14

*City of New York v. Beretta U.S.A. Corp.*,
   524 F.3d 384 (2d Cir. 2008) .................................... 12, 13, 15, 16, 26, 27

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011) ........................................................26, 27

*Comm'r v. Clark*,
   489 U.S. 726 (1989) ............................................................................14

*Ileto v. Glock, Inc.*,
   565 F.3d 1126 (9th Cir. 2009) .........................................................12

*In re A2P SMS Antitrust Litig.*,
   No. 12-cv-2656, 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) .......................20, 21

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ............................................................24, 25

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*
   *Achille Lauro in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ...............................................................21

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   191 F.3d 229 (2d Cir. 1999) ........................................................18, 19

*Landgraf v. USI Film Prod.*,
   511 U.S. 244 (1994) .............................................................................7

*Merrill v. Milligan*,
   142 S. Ct. 879 (2022) .........................................................................22

*Minnesota v. Fleet Farm LLC*,
   679 F. Supp. 3d 825 (D. Minn. 2023) ...............................................20

*Nat'l Shooting Sports Found., Inc. v. James*,
   604 F. Supp. 3d 48 (N.D.N.Y. 2022) ................................................14

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016) ............................................................................14

*Rehaif v. United States*,
   588 U.S. 225 (2019) ............................................................................18

*Sackett v. EPA*,
    598 U.S. 651 (2023)...................................................................13

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)...............................................................17, 18

*United States v. Dotson*,
    712 F.3d 369 (7th Cir. 2013)........................................................3

*United States v. Broxmeyer*,
    616 F.3d 120 (2d Cir. 2010).........................................................5

*United States v. Int'l Mins. & Chem. Corp.*,
    402 U.S. 558 (1971).....................................................................18

*United States v. Rivera*,
    415 F.3d 284 (2d Cir. 2005).........................................................3

*United States v. Tan*,
    16 F.4th 1346 (9th Cir. 2021)......................................................13

*United States v. Weintraub*,
    273 F.3d 139 (2d Cir. 2001)...................................................17, 18

*VanDerStok v. Garland*,
    86 F.4th 179 (5th Cir. 2023)..............................4, 5, 6, 8, 24

*VanDerStok v. Garland*,
    144 S. Ct. 1390 (2024) (Mem.).............................................4, 21

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996).....................................................................22

**<u>Statutes</u>**

Sup. Ct. R. 10 .....................................................................................22

15 U.S.C.

    § 7901(a)(3) .............................................................................10
    § 7901(a)(5) .......................................................................25, 26
    § 7901(a)(6) ...............................................................26, 27, 28
    § 7901(a)(7) .............................................................................26
    § 7901(a)(8) .............................................................................28
    § 7902(a) ...........................................................................10, 25
    § 7903(5)(A) ...........................................................................11
    § 7903(5)(A)(ii) ......................................................................12
    § 7903(5)(A)(iii) .........................................................10, 16, 17

18 U.S.C.
  § 921(a)(3)(A)...................................................................................3
  § 921(a)(3)(B)...............................................................................3, 4

28 U.S.C. § 1292(b) ............................................................................22

N.Y. Exec. Law § 63(12) ....................................................................16

N.Y. Gen. Bus. Law
  § 349(a) .............................................................................................16
  § 350..................................................................................................16

## **Other Authorities**

151 Cong. Rec. S9087-01 (2005) .......................................................13

*Attorney General James Stops Sales of "Ghost Guns" Into New York*,
  N.Y. Att'y Gen. (July 15, 2020), https://on.ny.gov/3e0pehk ..............8

## INTRODUCTION

The State tries to minimize the extraordinary nature of its suit and its many legal pitfalls. But the State cannot overcome the realities it seeks to avoid.

Defendants' products—precursors of frames or receivers of firearms that all parties agree require labor by third party individuals to become functional—are not, and have never been, firearms. In arguing otherwise, the State attempts to rest on its factual allegations, but it confuses factual allegations with legal conclusions. The State's factual allegations cannot resolve a disputed matter of statutory interpretation.

Further, the State and the United States largely ignore that precursors of frames or receivers had long been declared *not* to be firearms by the chief federal agency regulating firearms and New York public officials alike, including the State Attorney General's Office that brought this suit. Although an impressive effort in revisionist history, the characterization of ATF's former positions as case-by-case factual determinations are belied by the State's and the Federal Government's statements on which regulated members of the industry reasonably relied. To the extent the State's and ATF's statements are subject to multiple interpretations, that must cut against the retroactive imposition of civil liability based on an understanding of the regulatory framework that the regulator itself did not adopt until after the relevant period in this lawsuit, if at all.

1

Finally, even if the State can somehow establish that despite its earlier pronouncements to the contrary, Defendants' products were firearms all along, the State's suit is barred by the PLCAA. The State is not circumspect about what it seeks to do here: it seeks to hold private companies responsible for the State's "public health and safety crisis caused by gun violence." A-38, ¶ 1. But the PLCAA does not permit a State to shift policy and blame individual members of private industry in this manner.

The State's lawsuit is contrary to at least two federal statutes, and the State's defenses do nothing to save it. Both the GCA and the PLCAA require that this Court reverse the district court.

## ARGUMENT

### I.    Defendants' Products Cannot Properly Be Defined as Firearms under the Gun Control Act.

#### A. The State Has Not Established that Component Parts of Frames or Receivers Only Made Functional by the Labor of Others Are Themselves "Firearms" under Federal Law.

Taking the State's factual allegations as true, Defendants manufacture and distribute component parts of what eventually, through the additional labor of third-party customers, may become functional frames or receivers and eventually

2

functional firearms. The State has not, and cannot, establish that these precursor parts have always been defined as "firearms" under federal law.

First, the State relies on *United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005). But *Rivera* only establishes that *weapons* rendered temporarily inoperable still qualify as firearms. 415 F.3d at 286. The Court explained: "Where a weapon designed to fire a projectile is rendered inoperable . . . it is not removed from the statute's purview; although it is temporarily incapable of effecting its purpose, it continues to be 'designed' to fire a projectile." *Id*. A proper reading of the GCA, meanwhile, establishes that component parts of frames or receivers are not weapons at all. *See United States v. Dotson*, 712 F.3d 369, 371 (7th Cir. 2013) (noting that "almost any solid object can be used as a club, yet we don't call all solid objects weapons"). Only by assuming the correctness of its own ultimate legal premise—that an unfinished precursor of a frame or receiver is itself a "weapon"—can the State claim that *Rivera* supports its position.

Second, the State's textual argument, which parrots the district court, cannot bear the weight of the State's interpretation. The GCA establishes, as relevant here, two methods of defining something as a "firearm" under federal law. Subsection (A) of the GCA defines "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). And Subsection (B) defines "firearm" as

3

"the frame or receiver of any such weapon." *Id.* § 921(a)(3)(B). Congress did not use the "may readily be converted" language in Subsection (B), which applies to any "frame or receiver."

The State and the United States both claim that "by including the phrase 'any such weapon,' " in sub-section (B), "Congress specifically incorporated subsection (A)'s definition by reference, including its reference to inoperable products that are 'designed to' or 'may readily be converted' into a weapon." Appellee's Br. at 39, Doc. 88 (July 10, 2024); U.S. Br. at 11–12, 13–14, Doc. 87 (July 10, 2024). Even if so, that would not get them anywhere. As Judge Oldham explained, under that reading, sub-section (B) would define " 'firearm' to include 'the frame or receiver of any such weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive.' " *VanDerStok v. Garland*, 86 F.4th 179, 210 (5th Cir. 2023) (Oldham, J., concurring) *cert. granted*, 144 S. Ct. 1390 (2024). The "may readily be converted" phrase still only modifies "weapon," not frame or receiver.

Nothing in Judge Oldham's *VanDerStok* concurrence is to the contrary. After all, Judge Oldham *concurred* in declaring ATF's new regulation invalid. In the section on which the State relies, Judge Oldham was explaining that a "weapon" described in sub-section (A) must have a *finished* frame or receiver; he was not addressing whether unfinished frames qualified as weapons under sub-section (A)

4

or as frames or receivers under sub-section (B). When Judge Oldham discussed unfinished or incomplete frames or receivers (the products the State undisputably alleges Defendants sold here), he rejected the State's and United States' position here as "perhaps ATF's most aggressive attempt to bootstrap hunks of metal and plastic into the GCA's definition of a 'firearm.' " 86 F.4th at 211. In sum, the statute as written does not include items that may "readily be converted" into a "frame or receiver." *Contra* Appellee's Br. at 39.[1]

Third, and relatedly, the State does not plausibly allege that Defendants' component parts of frames or receivers are themselves "frames or receivers" under the GCA. Nor could it—that is a definitional legal question, not a factual one.[2] What is more, the State's cited factual allegations reveal that the State alleged no such thing. All the State alleges at the cited passages is that "there is no meaningful difference between the Defendants' products" and a frame or receiver one could buy

---

[1] Even if it did, the precursor parts at issue here cannot "readily" be converted into anything. As the United States has previously recognized, the process of finishing a precursor part "require[s] skill, tools, and time," and "care rather than speed." Fed. Defs'. Mem. of Law in Supp. of Mot. for Summ. J. at 27, *Syracuse v. ATF*, No. 1:20-cv-06885 (S.D.N.Y. Jan. 29, 2021), ECF No. 98.

[2] The State is wrong to suggest that Defendants' reference to dictionary definitions in interpreting the GCA's terms is merely a dispute of the State's factual allegations. Appellee's Br. at 40. Dictionary definitions are often probative in statutory interpretation cases, and the State cannot allege the meaning of a federal statute. *See, e.g.*, *United States v. Broxmeyer*, 616 F.3d 120, 125 (2d Cir. 2010) ("[W]e look to the dictionary" for the "common definitions" of words). Here again, the State fails to substantively engage with Defendants' argument.

at a store, A-43, ¶ 23, that the differences are "trivial," A-46, and that the component parts "are designed to mimic," *id.*, and "designed to imitate," A-44, ¶ 26, frames or receivers. Alleging that differences between categories of objects are not "meaningful" and that one object is "designed to mimic" another is not the same as alleging that one object *is* another object. Even if the State *could* allege its way around the statute (it cannot), it did not do so.

Fourth, to the extent the State takes issue with the fact that the GCA might "allow persons to evade critical requirements merely by selling operable weapons in parts," the State should take its concern up with Congress, not this Court. *See also* U.S. Br. at 22 (raising concerns about "evasion"). And Congress has already rejected the State's policy argument. Under the "GCA's predecessor statute, the Federal Firearms Act," any "part or parts of" a firearm were defined as firearms. *VanDerStok*, 86 F.4th at 191 (citing Federal Firearms Act of 1938, Ch. 850, Pub. L. No. 75-785, 52 Stat. 1250, 1250 (1938) (repealed 1968)). "Congress *removed* this language when it enacted the GCA, replacing 'any part or parts' with just 'the frame or receiver of any such weapon.'" *Id.* The State ignores this important point, which directly contradicts the State's theory of the statute.

Fifth, the State quibbles over whether ATF's statements in 2015 and 2017 indicating that unfinished frames or receivers are not firearms under federal law are part of a "fact-specific approach to classification," Appellee's Br. at 42, and thus

6

cannot be taken to suggest a position that unfinished frames or receivers are not firearms. This is an awfully fine distinction on which to assert that regulated parties may not rely on their regulator's public statements. Such an approach violates "[e]lementary considerations of fairness" which "dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly[.]" *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994). Instead, the State's entire theory of the case improperly seeks to strip the industry's "confidence about the legal consequences of their actions." 511 U.S. at 266.

In any case, the United States did make *categorical* legal arguments that unfinished frames or receivers cannot be defined as firearms under the GCA even more recently. *See* Opening Br. at 28, Doc. 79 (May 10, 2024). "ATF's position is that the 'readily be converted' language modifies only 'weapon' in Section 921(a)(3)(A) and not 'frame or receiver' in Section 921(a)(3)(B)." Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J. at 6-7 & n.3, Doc. 114, *City of Syracuse v. ATF*, No. 20-cv-6885 (S.D.N.Y. Mar. 19, 2021). The State's and United States's effort to backtrack what that language plainly states is an unsuccessful exercise in revisionist history. To the extent these statements are subject to multiple interpretations, that lack of regulatory clarity counsels against imposing retroactive civil liability based on an interpretation of the regulatory framework that the regulator itself cannot be said to have clearly adopted.

Finally, the State makes no explanation whatsoever for its *own* statements that Defendants' products are not firearms. *See* Opening Br. at 34. The New York Office of the Attorney General stated that "an incomplete lower receiver—lacking certain holes, slots, or cavities—is not considered a firearm." *Attorney General James Stops Sales of "Ghost Guns" Into New York*, N.Y. Att'y Gen. (July 15, 2020), https://on.ny.gov/3e0pehk. The State was right when it made that statement, and it cannot now impose massive retroactive liability on private parties who took the State at its word.[3]

## B. The State's Remaining State and Local Law Allegations Do Not Preclude Reversal.

The State argues that its claims would survive in some form based on alleged violations of State and local laws even if it is wrong about the meaning of firearms under federal law. The intended upshot of this argument is unclear. That *some* aspects of *some* claims against *some* Defendants might survive even if this Court reverses

---

[3] Indeed, the interpretation of the GCA that the State and the Federal Government propose would render a vast swath of long-believed lawful conduct retroactively *un*lawful. Many receivers of the AR-15, the most popular rifle in America, *VanDerStok*, 86 F.4th at 208, can be converted into a machinegun receiver by drilling a single hole. Under the State and United States's interpretation, the owners and sellers of these common rifles contain a machinegun frame or receiver, making their owners and sellers, "millions and millions of Americans[,] . . . felons-in-waiting." *Id.* Accepting this retroactive redefinition of "frame or receiver" to include precursors simply because they readily may be converted to function as frames or receivers risks upending the entire federal regulatory scheme surrounding firearms and making felons of millions and millions of law-abiding citizens.

on the federal law holdings is no basis for denying relief over the reversible claims. This Court could of course reverse and remand for further (and significantly narrowed) proceedings, or simply vacate the district court's opinion and remand.[4]

In any case, the vast majority of the allegedly unlawful conduct identified in the State's complaint could *only* have been unlawful if the State is right about the meaning of "firearm" in the Gun Control Act. As Defendants explained, *see* Opening Br. at 22, the effective dates of the applicable state and local laws post-date much of the conduct the State alleges, and so that conduct would provide no basis for either liability or damages.

## II. If Non-Functional Component Parts of Frames or Receivers Are Firearms, Most Defendants Are Immune from Suit under the PLCAA.

### A. The State's Suit Is Barred by the PLCAA.

Congress passed the Protection of Lawful Commerce in Arms Act ("PLCAA") in 2005 in response to concerns that politically motivated governmental entities were targeting America's firearms industry with lawsuits attempting to lay

---

[4] The State's reference to "advisory opinion[s]," Appellee's Br. at 33, is inapposite. The State has not disputed that this appeal presents a justiciable controversy.

9

at the industry's feet the harms resulting from the criminal misuse of legal products. 15 U.S.C. § 7901(a)(3).

The PLCAA establishes complete immunity from suit, not just liability. Where the PLCAA applies, a covered action "*may not be brought*" in "any Federal or State court." *Id*. § 7902(a) (emphasis added). The PLCAA also includes, as relevant here, one narrow exception to its broad grant of immunity. What is often called the PLCAA's "predicate exception" permits suit only when a company (1) "knowingly" violates a (2) state or federal firearms law, *and* (3) that violation "was a proximate cause" of whatever harm the suit alleges. *Id*. § 7903(5)(A)(iii).

The State's suit plainly falls within the PLCAA's broad coverage, and the statute's narrow exception does not apply. In arguing otherwise, the State makes several threshold errors.

First, the State misstates the PLCAA's scope. The State claims that the "PLCAA is not available as a defense when a claim is premised on a defendants' own illegal conduct." Appellee's Br. at 46; *id.* at 28–29 ("Most of OAG's claims are categorically outside the scope of PLCAA because they are premised on defendants' own illegal and fraudulent actions.").[5] That is an incorrect statement of law. The

---

[5] The State does not respond to *any* of Defendants' arguments regarding the district court's erroneous reliance on the word "solely" to reach a similar interpretation. *See* Opening Br. at 41–44. Any response is therefore forfeited.

PLCAA applies to all "qualified civil liability action[s]," which include any "civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for *damages* . . . or other relief, *resulting from* the criminal or unlawful misuse of a qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A) (emphasis added). This "damages . . . resulting from" language establishes that even if the State alleges some negligent conduct by certain Defendants, the PLCAA still applies where the State's claims seek "damages" for the alleged harms of gun violence—that is, resulting from aggregate wrongful and criminal acts by third parties. *Id.* Here, there is no question that the State's Complaint premises its claim for damages on the conduct of third parties. *See, e.g.*, A-139–A-140, A-142–A-143, A-144, A-146 (alleging increased criminality and damages resulting therefrom). The State makes no argument to the contrary.

---

To reiterate the points: (1) The controlling definitional provision does not use the word "solely." (2) The word "solely" came from the section of the statute describing one of several independent purposes: one of the purposes was to avoid "the possibility of imposing liability on an entire industry for harm that is solely caused by others" § 7901(a)(6). Read in context, this stated purpose just describes one especially pernicious consequence of failing to pass the PLCAA. (3) Even that stated purpose read in isolation does not speak of third parties' *conduct*, but of *harm* caused by others. Even as the State alleges some wrongful *conduct* by certain defendants, its suit is still premised on the *harms* inflicted by third-party customers. (4) The "solely" rule would render the PLCAA superfluous. Every justiciable civil action must allege an injury traceable to the defendant's own conduct. So if the "solely" rule is right, then no claim that passed the hurdles of establishing standing would ever fall within the PLCAA's protections.

11

Were there any lingering question if the PLCAA still applies where a plaintiff alleges misconduct by the industry member itself, *Beretta* answers the question decisively in the affirmative. In *Beretta*, the plaintiff city alleged (incorrectly) that the defendants "market guns . . . with the knowledge that those guns will be diverted through various mechanisms into illegal markets." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 389 (2d Cir. 2008). The city also alleged "that the Firearms Suppliers 'could, but do not, monitor, supervise or train distributors or dealers to avoid sales that feed the illegal secondary market.'" 524 F.3d at 391. Those claims are both "premised on a defendants' own illegal conduct." Appellee's Br. at 46. In holding that the claims were nevertheless precluded, *Beretta* squarely contradicts the State's argument that PLCAA immunity is not available for such claims.

Nor does the PLCAA have a general "negligence exception" for alleged negligence by firearm industry members. "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009). In particular, the exception found in § 7903(5)(A)(ii) illuminates Congress's intent to *prohibit* general negligence claims. The only permissible claims predicated on negligence are for "negligent entrustment or negligence per se." 15 U.S.C. § 7903(5)(A)(ii). Congress rejected calls to add a further exception for "gross negligence or recklessness" because doing so would have "effectively 'gut[ted]' the Act." *See Beretta U.S.A. Corp.*, 524 F.3d at 403–04

(citing *Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1294 (C.D. Cal. 2006)); *see also* 151 Cong. Rec. S9087-01, S9374-01 (2005). In sum, the State's proposed carve-out does not exist. If it did, it would swallow the rule and render the PLCAA's broad immunity from suit a nullity.

The State's misreading of the statute makes no sense unless the reader all but ignores the actual statutory text. The State bypasses the words Congress enacted and the President signed, rushing instead to invoke legislative history. But "signals from legislative history cannot rebut clear statutory text." *Sackett v. EPA*, 598 U.S. 651, 701 (2023). And the State relies on not just any legislative history, but statements of individual Senators. "[R]emarks of a single legislator, even the sponsor, are not controlling," even "in analyzing legislative history." *United States v. Tan*, 16 F.4th 1346, 1352 (9th Cir. 2021) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, (1979)). "[F]loor statements by individual legislators rank among the least illuminating forms of legislative history." *Id.* In any case, the individual Senator's statements on which the State relies do not even prove the State's point. That an industry member might be liable for its own negligence in at least some circumstances does not establish, as the State tries to assert here, that an industry member can be liable for its own alleged negligence where the *damages* are attributable to third parties.

The State also provides this Court with an incorrect statement of the relevant preemption standard. The State claims that "courts must presume that Congress has intended to preserve state law—a presumption that is overcome only where Congress demonstrates a 'clear and manifest' preemptive purpose." Appellee's Br. at 44–45 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). That is wrong, as the presumption against express preemption no longer applies. The Supreme Court has held that courts should "not invoke any presumption against preemption" in express preemption cases such as this one. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (cleaned up). This Court in turn discarded the presumption: "We 'do not invoke any presumption against pre-emption' when a statute contains an express-preemption clause." *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (quoting *Franklin*, 579 U.S. at 125). And "[t]he PLCAA expressly preempts qualified civil liability actions." *Nat'l Shooting Sports Found., Inc. v. James*, 604 F. Supp. 3d 48, 57 (N.D.N.Y. 2022) (internal quotations omitted).

Rather, in the PLCAA context, the burden lies heavily on the party invoking an alleged exception to the statute's broad protection. When a party seeks to exploit a statutory "exception" that "qualifie[s]" a "general statement of policy," courts "usually read the exception narrowly in order to preserve the primary operation of the provision." *Comm'r v. Clark*, 489 U.S. 726, 739 (1989). And this Court has

14

already applied that principle in construing the exceptions to the PLCAA's core definition "narrowly." *Beretta*, 524 F.3d at 403.

## B. The Predicate Exception Does Not Apply.

The State cannot satisfy the PLCAA's narrow predicate exception. *Beretta* held that the predicate exception applies *only* to state or federal statutes (1) that "expressly regulate firearms"; (2) that "courts have applied to the sale and marketing of firearms"; or (3) that "clearly can be said to implicate the purchase and sale of firearms." *Id.* at 404.

This exception applies "narrowly." *Id.* at 403–04. The exception does not permit the State to pursue claims *unless* the state legislature has expressly permitted a cause of action through "statutes that actually regulate the firearms industry." *Id.* On the other hand, the PLCAA prohibits claims based on statutes of general applicability. *Id.* at 400–04. Put another way, "a statute of general applicability that does not encompass the conduct of firearms manufacturers" is *not* a predicate statute. *Id.* at 400. It is not enough that a statute is so general that it could be read to encompass firearms manufacturers or sellers *along with the general public*; a predicate statute must be legislatively directed toward the purchase and sale of firearms. *See id.* at 400–04. The State has satisfied none of these requirements, and each element of the exception provides an independent basis for which the State's claims should be dismissed under the PLCAA.

The State fails to satisfy the predicate exception's first requirement because its claims of illegal conduct are all based on statutes of general applicability, not statutes applicable to firearms. Each statute, by its terms, applies generally to "any person," N.Y. EXEC. LAW § 63(12), or "any business," N.Y. GEN. BUS. LAW §§ 349(a), 350. As these statutes explicitly apply to the "general public," *Beretta*, 524 F.3d at 403–05, they are statutes of "general applicability" that cannot satisfy the predicate exception. *Id.* Indeed, the two General Business Law statutes are even specifically entitled "*General*." The State ignores these arguments.

Instead, the State rests on its novel "nesting" theory of liability. Under this theory, the State attempts to get around *Beretta* by bringing claims under a statute that is *not* "applicable to the sale or marketing" of firearms as a means to incorporate by reference *other* statutes that *are* applicable. The State fails to respond to Defendants' argument that this "end-run around the PLCAA" is unsupported and untenable. Opening Br. at 45–48.

The State devotes only a few substantive sentences in defense of its novel nesting theory. First, the State asserts without support that "nothing in the text of the predicate exception or this Court's decision in *Beretta* requires that a plaintiff seek relief under the statute that was violated." Appellee's Br. at 48. But there is a textual requirement—the State just ignores it. As Defendants have explained, the predicate exception requires "*an action*"—and thus, a cause of action—based on a firearms-

related statute. Opening Br. at 47 (quoting 15 U.S.C. § 7903(5)(A)(iii)). As for *Beretta*, the Court had no occasion to consider a "nesting" workaround to its general rule because the novel theory was not raised.

Even if the State's novel nesting theory were tenable, it has nevertheless failed to establish the remaining elements of the predicate exception.

As to knowing violations, the State failed to allege that Defendants knew their products violated firearms law—or even knew that their products *were* firearms—to "knowingly violate" firearms law. Opening Br. at 50–52. The State relies on *United States v. Weintraub*, 273 F.3d 139, 147 (2d Cir. 2001), Appellee's Br. at 51, but that case supports Defendants. In describing when knowledge may be assumed, the Court expressly distinguished the firearms context. 273 F.3d at 148–49. The Court also emphasized the importance of "settled expectations" in assuming knowledge of unlawful conduct. As Defendants have detailed at length, both New York State officials and the chief federal regulator of firearms stated that Defendants' products are *not* firearms. Opening Br. at 31–34. This Court thus cannot impute knowledge that—contrary to this public, shared understanding—Defendants' products were firearms (and thus in violation of the vast architecture of federal and state firearms regulations) all along.[6]

---

[6] The State fails to address Defendants' discussion of *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007), which establishes that when there is "more than

Even assuming that the State need only show "knowledge of facts and attendant circumstances that comprise a violation of the statute," *Weintraub*, 273 F.3d at 147, it has not done even that.[7] The State has not plausibly alleged that Defendants knew of the critical attendant circumstance: that their products were "firearms." At the very least, the State must plausibly allege that Defendants *knew* their products were firearms, even if they did not know they were violating laws regulating firearms. *See United States v. Int'l Mins. & Chem. Corp.*, 402 U.S. 558 (1971) ("A person thinking in good faith that he was shipping distilled water when in fact he was shipping some dangerous acid would not be" charged with knowledge). The State has not done so and has failed to establish the "knowingly violate[]" requirement of the PLCAA's predicate exception.

As to proximate cause, the State again provides the Court the wrong legal standard. The State claims proximate cause only requires that "identified harms [must] 'have a reasonable connection to [the defendant's] actions.'" Appellee's Br.

---

one reasonable interpretation" of a law, a defendant "who merely adopts one such interpretation" is not "a knowing or reckless violator." *Id.*

[7] The State mischaracterizes, and thus fails to substantively engage with, Defendants' arguments regarding *Rehaif v. United States*, 588 U.S. 225 (2019). The State asserts: "*Rehaif* did not hold, as defendants suggest (Br. at 50), that the government must prove in all cases that a defendant knew about the specific law that was allegedly violated." Appellee's Br. at 53. Defendants did not argue that a defendant must know which specific law renders his conduct illegal. Defendants argued that *Rehaif* requires that a defendant know that his conduct *is* in some fashion *illegal*.

at 51–52 (quoting *Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999)). This excerpt comes from the Court's background discussion of outdated scholarly treatments of proximate cause. The Court went on: "Over the passage of time, however, courts have somewhat clarified the definition of proximate cause by identifying several traditional common law principles limiting liability whose application, in aggregate, formulates the proximate cause analysis." *Laborers*, 191 F.3d at 235. Now, proximate cause requires "that defendant's acts were [1] a substantial cause of the injury, . . . [2] that plaintiff's injury was reasonably foreseeable, . . . [and] [3] alleging (and ultimately, showing) a direct injury." *Id.* at 235–36. Perhaps realizing that it cannot satisfy the applicable test, the State tries to avoid it with an out-of-context misstatement of law.

Applying the right test, the State still has not established how the "mere sale of products—that could later, unilaterally by third parties, be turned into other products and then, in turn, used for wrongdoing" satisfies its required showing. Opening Br. at 54. And the State makes no attempt at establishing a "direct connection" between Defendants' alleged conduct and these third-party acts, or that Defendants' alleged acts were a "substantial cause" of the harm caused by third parties. *Laborers*, 191 F.3d at 235. For this reason, the State's argument that Defendants "quibble" about the causal chain is premature. Even if the State were somehow right that third-party criminality does not break any causal chain, the State

19

failed to make a prima facie case that there was a direct connection *to be broken in the first place*.

The State's cited cases are not to the contrary. *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 831 (D. Minn. 2023), is irrelevant. The cited language explains the proximate cause element of a per se negligence claim "[i]n Minnesota." *Id.* at 843. And *Estados Unidos*, as Defendants have explained, is an outlier that contradicts other Circuits and state high courts. Opening Br. at 55–56.

## III. This Court Has Appellate Jurisdiction.

### A. This Court Should Accept the District Court's Section 1292(b) Certification.

As explained at length in the Defendants' petition for 1292(b) review, Doc. 1.1 (No. 24-1497), the district court was right to certify its order for immediate appeal under 1292(b), and this Court should exercise its discretion to hear the appeal.

The State is wrong to assert that resolution of either the definitional firearm issue or the PLCAA issue would not "significantly affect the conduct of the action," *In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015) (quotation marks omitted), merely because the State's claims would survive in some form against at least some defendants even if the district court's holdings were reversed. There is no requirement that a controlling question of law, if reversed, would completely extinguish the plaintiff's case. The question is whether "even though *not* resulting in dismissal," reversal of the order "could significantly

20

affect the conduct of the action; or, the certified issue has precedential value for a large number of cases." *Id.*

That is the case here, as the district court rightly held. As discussed above, most of the allegedly unlawful conduct identified in the operative complaint could *only* have been unlawful if the State's interpretation of "firearm" in Section 921(a)(3) is correct. As this Court has made clear, "the resolution of an issue need not necessarily terminate an action in order to be 'controlling.' " *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990). Here, the great majority of the State's allegations of unlawful conduct would only have been unlawful (and hence relevant to the State's claims) if the items sold and manufactured by Defendants were indeed firearms under federal law. Thus, resolving this issue in Defendants' favor "would 'significantly affect the conduct of the action' by removing much of the support for the State's marquee claims." *See* Certification Order at 6–7, Doc. 269 (S.D.N.Y. May 20, 2024).

Further, the grounds for reasonable disagreement are substantial enough that the Supreme Court of the United States has granted certiorari to decide whether unfinished frames may be classified as "firearms" by ATF. *See VanDerStok*, 144 S. Ct. 1390 (Mem.) That the statutory interpretation question at issue is worthy of the

Supreme Court's discretionary certiorari review all but establishes substantial grounds for disagreement.

In response to this extraordinary development, the State speculates that the Supreme Court may have granted certiorari simply to correct the "outlier" error in *VanDerStok*. The State provides no basis for this speculation into the Supreme Court's thinking besides a string-cite of unrelated opinions. If the Supreme Court were interested in correcting an obvious error, it could have summarily reversed. *See* Supreme Court Rule 10 (laying out the factors for certiorari, which is only granted "for compelling reasons"). And the fact that the Supreme Court stayed the underlying lower court decisions to maintain the status quo while it evaluates the merits provides no basis for speculating about the ultimate result on the merits. *See Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("To reiterate," a vote to stay is "not a decision on the merits").

Finally, it is of no practical significance that the district court would not have granted 1292(b) certification on the PLCAA question alone. When a district court certifies its order under 1292(b), it certifies the entire order. *See* 28 U.S.C. § 1292(b). And this Court may consider any issue "fairly included" in the district court's order, *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). The immunity claims of a majority of the Defendants are plainly "fairly included" in the district court's order which considered and resolved that issue.

**B. This Court Also Has Jurisdiction Under the Collateral Order Doctrine.**

If for any reason this Court declines to accept the district court's certification of its order for immediate appeal under 1292(b), the Court would still have appellate jurisdiction under the collateral order doctrine.

The State is wrong in asserting that an immunity determination would require additional factfinding. The State seeks to have it both ways: it demands that the Court accept its factual allegations as establishing legal conclusions for the purposes of affirming the district court's statutory interpretation holding yet it would require factfinding anew for purposes of determining immunity.

This Court can readily decide the PLCAA immunity issue without any factual development. The PLCAA requires the Court to determine whether the suit is a "qualified liability action" and if so, whether any of the narrow exceptions applies. The main factual premise is one on which the parties agree: that seven Defendants are Federal Firearm Licensees (FFLs). *See* Appellee's Br. at 25 (citing J.A. 182 n.9). Thus, all there is left for this Court to do is to determine whether the State's suit is prohibited by the text of the PLCAA. That is a legal determination, not a factual one.

The State responds that this Court might have to determine whether Defendants acted "knowingly" under the predicate exception. But as Defendants have argued, the State failed to allege that Defendants had *any* knowledge of either the alleged unlawfulness of their conduct or the critical attendant circumstance that

23

their products were "firearms." Thus, deciding that issue would only require this Court to apply legal principles.

Likewise, whether non-functional precursors of frames or receivers can fall within the definition of firearms in the GCA is a legal question. Accepting as true the allegations in the complaint, whether Defendants' products were properly defined as "firearms" under federal law at the time is an interpretive question. *See* MTD Order at 15, Doc. 245 (S.D.N.Y. Feb. 23, 2024). Indeed, this is clear from the Fifth Circuit's opinion in *VanDerStok v. Garland*, which set down a rule of law that disassembled, or nonfunctional frames or receivers categorically do not fall into the statutory definition of firearms. 86 F.4th at 192. The court's opinion was focused on the text of the statute—which it held did not cover items that merely could *become* frames or receivers because "Congress explicitly declined to use," the phrase "designed to or may readily be converted," in the second part of its definition. *Id.* at 189.

As to pendent jurisdiction, the State simply assumes the correctness of its own arguments that a denial of PLCAA immunity is not appealable and makes no independent argument that the Court should decline pendent jurisdiction over the remaining issues. *See* Appellee's Br. at 62.[8]

---

[8] The State's citation to *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006), does not establish that a denial of immunity must be "completely

Finally, the State is wrong to argue that the PLCAA is not an immunity statute. The State argues that the PLCAA does not grant immunity and only provides a defense from liability because a PLCAA defense does not rest "upon an explicit statutory . . . guarantee that trial will not occur." Appellee's Br. at 63. (citing *Midland Asphalt Corp.*, 489 U.S. at 801). The PLCAA states that a "covered action" "*may not be brought*" in "any Federal or State court." 15 U.S.C. § 7902(a). It is difficult to imagine a more direct statutory guarantee that "trial will not occur." That is, after all, precisely what the PLCAA directs. Nor is it clear how the State can credibly argue that "avoiding trial" is not an "essential aspect" of a PLCAA defense. *See* Appellee's Br. at 64. It is, again, the *only* aspect of a PLCAA defense.

Seeking to avoid the statute's text, the State again attempts to redline Congress's work. It suggests other language that Congress *could* have used to convey a grant of immunity. *See* Appellee's Br. at 65. But the language Congress *did* use is crystal clear. A covered action "may not be brought in any Federal or State court." 15 U.S.C. § 7902(a). Congress's words mean what they say. After all, it makes no sense to create a defense to be used in a suit that "may not be brought."

The State also focuses on one provision in the PLCAA's statement of purposes, in which Congress explained that firearm industry members should "not

---

separate from the merits" to be immediately appealable. Appellee's Br. at 60. The Court's footnoted comment was about the denial of *class certification* and had nothing to do with the denial of any immunity. *Id.*

be liable" for third-party harms. *Id.* § 7901(a)(5). This statement of purpose—to the extent it can be read to mean that firearm industry members can be subject to suit so long as they are not held "liable"—in no way limits the Act's broader language in its substantive prohibition of any suit. It is perfectly consistent to say that no suit may be brought *because* no industry member should be held liable. Further, in the very next sub-section of its stated purposes, Congress decried even the "*possibility* of imposing liability on an entire industry for harm that is solely caused by others" as "an abuse of the legal system." *Id.* § 7901(a)(6). And in the sub-section after that, Congress warned that "the possible *sustaining* of these actions by a maverick judicial officer or petit jury would expand civil liability in a manner never contemplated by the framers of the Constitution." *Id.* § 7901(a)(7). To the extent there is any doubt— and there is not—Congress's reference to the "sustaining" of an action establishes that the PLCAA provides immunity from ongoing suit, not just a defense to liability.

Next, the State provides no support for its implied assertion that Congress must use the magic word "immunity" to confer immunity from suit. "Congress need not use magic words in order to speak clearly." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 126 (2d Cir. 2011) (cleaned up). If anything, Congress used *stronger* language in the PLCAA, barring even the initiation of any suit. But even if a magic word were required, this Court already supplied one in characterizing the PLCAA as "immunizing" firearm industry

members. *Beretta*, 524 F.3d at 389–90. "By its terms," this Court explained, "the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions." *Id.* at 397. The PLCAA "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions." *Id.* at 398.

The State's citation of *City of New York v. Mickalis Pawn Shop* is not to the contrary. 645 F.3d at 125. There, this Court considered whether the PLCAA either wholly stripped the federal courts of jurisdiction or only provided a "complete defense" against a "qualified civil liability action." *Id.* The Court's holding was not based, as the State suggests, on the difference between immunity from suit and a mere substantive defense. Rather, absent a sufficiently clear signal of jurisdiction stripping, the Court interpreted "the PLCAA as speaking only to the rights and obligations of the litigants, not to the power of the court." *Id.* at 127. The Court in no way limited those "rights and obligations." *Id.*

Finally, the State attempts to distinguish the other analogous immunity doctrines for which the collateral order permits immediate appeals because, the State asserts, those doctrines promote a "substantial public interest." Appellee's Br. at 66. But the PLCAA does the very same. Again, Congress could not have been clearer:

> The possibility of imposing liability on an entire industry for harm that
> is solely caused by others is an abuse of the legal system, erodes public

confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

15 U.S.C. § 7901(a)(6). Of particular relevance here, "liability actions commenced or contemplated by the . . . States . . . to use the judicial branch to circumvent the Legislative branch of government," *id.* § 7901(a)(8), threatens "the Separation of Powers . . . federalism, State sovereignty and comity between the sister States." *Id.*

That the State might disagree with these policies enacted by the people's representatives does not give the State license to disregard them.

## CONCLUSION

For the foregoing reasons, the district court's judgment denying Defendants' motion to dismiss should be reversed.

Dated: July 31, 2024                    Respectfully submitted,

Steven Jay Harfenist                    /s/David H. Thompson
**HARFENIST KRAUT &**                   **COOPER & KIRK, PLLC**
**PERLSTEIN, LLP**                      David H. Thompson
3000 Marcus Avenue                      Brian W. Barnes
Suite 2e1                               Athanasia O. Livas
Lake Success, NY 11042                  1523 New Hampshire Ave., NW
516-355-9600                            Washington, DC 20036
Fax: 516-355-9601                       (202) 220-9600
sharfenist@hkplaw.com                   Fax: (202) 220-9601
*Attorney for Arm or Ally LLC*          dthompson@cooperkirk.com
                                        bbarnes@cooperkirk.com
                                        *Attorneys for Brownells, Inc., a/k/a*
                                        *Brownells or Bob Brownell's; Salvo*

V.R. Bohman
Cameron Schlagel
**SNELL & WILMER L.L.P.**
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, NV 89169
702-784-5200
Fax: 702-784-5252
vbohman@swlaw.com
cschlagel@swlaw.com
*Attorneys for Blackhawk
Manufacturing Group, Inc.*

Jonathan Y. Ellis
**MCGUIREWOODS LLP**
501 Fayetteville St.
Suite 500
Raleigh, NC 27601
919-755-6688
jellis@mcguirewoods.com
Jason Cowley
**MCGUIREWOODS LLP**
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
704-343-2030
jcowley@mcguirewoods.com

Jean Paul Bradshaw, II
**LATHROP GPM LLP**
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2612
816-460-5507
Fax: 816-292-2001
jeanpaul.bradshaw@lathropgpm.com

*Technologies, Inc., a/k/a 80P
Builder or 80P Freedom Co.;
Primary Arms, LLC; and Rock Slide
USA, LLC*

Ryan Lawrence Erdreich
Richard Frederick Brueckner, Jr.
**PISCIOTTI LALLIS
ERDREICH**
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
973-245-8100
rerdreich@pisciotti.com

Christopher Adams
**GREENBAUM ROWE SMITH
& DAVIS
NEW JERSEY**
331 Newman Springs Road
Building 1, Suite 122
Red Bank, NJ 07701
732-476-2692
cadams@greenbaumlaw.com

Jessica Maria Carroll
**GREENBAUM ROWE SMITH
& DAVIS**
75 Livingston Ave.
Roseland, NJ 07068
973-577-1910
Fax: 973-577-1911
jcarroll@greenbaumlaw.com
*Attorneys for Rainier Arms, LLC*

Shoshanah Mae Shanes
**LATHROP GPM LLP**
7701 Forsyth Blvd.
Suite 500
Clayton, MO 63105
224-456-7099
shoshanah.shanes@lathropgpm.com

Tobias Jacob Fischer
**MCGUIREWOODS LLP**
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2143
tfischer@mcguirewoods.com
*Attorneys for KM Tactical*

*Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B)(ii) because it contains 6,997 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word for Microsoft Office 365 in 14-point Times New Roman font.

Dated: July 31, 2024

/s/David H. Thompson
David H. Thompson

*Attorney for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of July 2024, I filed the foregoing via the

Court's ACMS system, which will electronically notify all counsel requiring notice.


Dated: July 31, 2024     <u>/s/ David H. Thompson</u>
          David H. Thompson

          *Attorney for Defendants-Appellants*