

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 9, 2025

By electronic filing

Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

    Re:   *New York v. Arm or Ally*, No. 24-773(L)
             Oral argument held September 25, 2024, before
             Judges Bianco, Menashi, and Lee

Dear Ms. Wolfe:

The government respectfully submits this supplemental letter brief in response to the Court's October 3, 2024, order directing the parties to address the effect of the Supreme Court's decision in *Bondi v. VanDerStok*, 604 U.S. \_\_\_, 2025 WL 906503, 2025 U.S. Lexis 1280 (Mar. 26, 2025), on this case. In *VanDerStok*, the Supreme Court held that the Gun Control Act ("GCA") applies to at least some weapon parts kits and unfinished frames or receivers, and accordingly rejected a facial challenge to a rule promulgated by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") that regulated such kits.

*VanDerStok* confirms the government's interpretation of the Gun Control Act and the correctness of the district court's ruling in this case.

The central point of the government's brief to this Court is that unfinished frames and receivers may qualify as "firearms" under the Act, 18 U.S.C. § 921(a)(3)(B). (Gov't Br. 15–23). The Supreme Court has now agreed: "[t]he GCA reaches . . . at least some 'partially complete' frames or receivers." 2025 WL 906503, at *9. The Court described the same example cited by the government and the district court—the unfinished frame of a Glock-variant handgun sold by Polymer80 (JA 175; Gov't Br. 17–19)—noting that "a person with novice skill, using common tools" could make that unfinished frame "fully functional" "within minutes" by removing plastic tabs and drilling a few holes. 2025 WL 906503, at *10 (quotation marks omitted). Such an unfinished frame "qualifies as a 'frame' for purposes" of § 921(a)(3)(B). *Id*. "[T]he terms 'frame' and 'receiver' in [§ 921(a)(3)(B)] are artifact nouns [that] may sometimes describe not-yet-complete objects," much like a manuscript may be referred to as a "novel" or an IKEA kit is referred to as a "table." *Id*.; *accord id.* at *6 (describing an "artifact noun" as a "word for a thing created by humans . . . typically characterized by an

intended function, rather than by some ineffable natural essence," and for that reason used by "everyday speakers . . . to refer to unfinished objects[] at least when their intended function is clear" (quotation marks omitted)).

Furthermore, the Court found support for this reading in the use of the words "frame" and "receiver" elsewhere in the GCA. *Id.* at *10. Under 18 U.S.C. § 923(i), a serial number must be engraved on the "receiver or frame" of a firearm. Because the statutory definition of "firearm" indisputably includes certain products that are not complete weapons, the terms "frame" and "receiver" in § 923(i) must also "encompass some unfinished and unconventional frames or receivers"— and therefore the same words should not "bear a more restrictive meaning when they appear just a few sections away in § 921(a)(3)(B)." *Id.*

The Court also observed that ATF "for decades . . . has consistently interpreted [§ 921(a)(3)(B)] to reach some unfinished frames and receivers." *Id.* at *11. That "contemporary and consistent view[] of a coordinate branch of government" is "evidence of the law's meaning." *Id.*

The Court expressly rejected arguments the defendants raise in this case. The fact that § 921(a)(3)(A) refers to a weapon that "may readily be converted" to an operating firearm, while subparagraph (B) lacks similar language, does not suggest that (B) does not reach unfinished frames or receivers. *Id.*; (Gov't Br. 20–21). Any such inference "does not account for the fact that ordinary speakers sometimes use unadorned artifact nouns like 'weapon,' 'frame,' or 'receiver' to reach unfinished articles." *Id.* Moreover, subparagraph (B) "speaks of the 'frame or receiver *of any such weapon*,'" referring "back to weapons encompassed by" § 921(a)(3)(A), where "the term 'weapon' . . . encompasses some things that are not yet fit for effective use in combat, including starter guns and disassembled rifles, as well as certain weapon parts kits." *Id.* at *12 (emphasis in *VanDerStok*).

*VanDerStok* also addressed the defendants' contention that because the GCA's 1938 predecessor statute defined firearms to include "any part or parts of such weapon," the absence of similar language in § 921(a)(3) means that only complete products are covered. But that conclusion "does not follow." *Id.* at *8. The GCA may "sweep[] more narrowly than some other statutes" and does not "reach[] every piece or

part that can be used to produce a firearm," including, for example, "standalone triggers, barrels, stocks, or magazines." *Id*. But that does not imply that the terms used in § 921(a)(3) do not include unfinished items that may readily be completed into functional firearms. *Id*.; (Gov't Br. 21).

    In sum, *VanDerStok* conclusively agrees with the government's position in this case: "[t]he GCA embraces . . . some weapon parts kits and unfinished frames or receivers." *Id*. at *12. The decision confirms that the district court in this case was correct in holding that defendants' products are firearms under the GCA, and its denial of defendants' motion to dismiss should be affirmed.

                              Respectfully submitted,

                              MATTHEW PODOLSKY
                              Acting United States Attorney

By:   /s/ Benjamin H. Torrance
      LUCAS ISSACHAROFF
      BENJAMIN H. TORRANCE
      Assistant United States Attorneys
      86 Chambers Street, 3rd Floor
      New York, New York 10007
      Tel.: (212) 637-2737/2703
      E-mail: lucas.issacharoff@usdoj.gov
              benjamin.torrance@usdoj.gov

cc: Counsel of record (by electronic filing)