*People of the State of New York v. Arm or Ally* – No. 24-773
Letter Brief on Behalf of All Defendants

**<u>VIA ELECTRONIC FILING</u>**

Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals
  for the Second Circuit
Thurgood Marshall United
  States Courthouse
40 Foley Square
New York, New York 10007

April 9, 2025

> **Re:  Post-argument letter brief in *The People of the State of New York v. Arm or Ally, LLC, et al.*, No. 24-773, Oral argument held before Judges Bianco, Menashi, and Lee on September 25, 2024**

Dear Ms. Wolfe,

Defendants-Appellants submit this letter brief, per the Court's order of October 3, 2024, Doc. 126.1, to address how the Supreme Court's decision in *Bondi v. VanDerStok*, 604 U.S. ___, No. 23-852, 2025 WL 906503, at *2 (U.S. Mar. 26, 2025), bears on this case.

> **I.  *VanDerStok* Resolved a Threshold Statutory Interpretation Question Under the Gun Control Act But Emphasizes the Need for Fair Notice of the GCA's Scope.**

In analyzing a facial challenge to a federal ATF regulation, the Supreme Court in *VanDerStok* resolved a threshold statutory interpretation question about the word "firearm" in the Gun Control Act ("GCA")—namely, whether

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 2 of 12

*any* weapon parts kits or *any* unfinished frames or receivers might qualify as a "firearm." The Court rejected the facial challenge because, in its view, the GCA reaches "at least some kits," *id.* at *5, and "at least some 'partially complete' frames or receivers," *id.* at *9. The Court did not resolve, and explicitly refrained from resolving, the question as to all products, including many of the products at issue in this case.

To be sure, *VanDerStok* forecloses the Defendants' narrowest reading of the GCA—i.e., that "firearm" includes only fully operable frames or receivers. At the same time, the holding confirms the issues of fair notice and reliance presented here. Unlike *VanDerStok*, this case concerns not a "facial" challenge to ATF's regulation—or any challenge to the current regulatory definition at all—but a State's attempt to impose massive retroactive civil liability on private parties for conduct that was, at the time alleged, expressly approved by federal regulators. *VanDerStok* recognizes that regulatory change and one Justice expressly highlights the fair notice concerns it presents.

As to the other issues present in this appeal, *VanDerStok* did not address the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7902 *et. seq.*, although the Supreme Court is poised to decide questions that would clarify this Court's PLCAA review in *another* recently

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 3 of 12

granted case highly analogous to this one. *See Smith & Wesson Brands, Inc.,*

*et al. v. Estados Unidos Mexicanos*, No. 23-1141. If anything, *VanDerStok*

indirectly confirmed that the PLCAA applies because it held that at least

some weapons parts kits are "firearms"—confirming that such products fall

within the PLCAA's protection. And *VanDerStok* had no impact whatsoever

on Defendants' arguments that this Court can hear an interlocutory appeal

from the denial of PLCAA immunity, as it does with other denials of

immunity.

### A. *VanDerStok*'s Facial Challenge Analysis Resolved How to Interpret the Gun Control Act's Statutory Language As to Some, But Not All, Weapons Parts Kits.

In *VanDerStok*, the Court considered whether a new ATF rule

regulating unfinished frames and receivers as "firearms" is facially

inconsistent with the GCA. 2025 WL 906503, at *9. The Court ultimately

upheld ATF's regulation. Critical to the Court's analysis was its recognition

of the Petitioners' suit as a *facial* challenge. *See id.* at *4, *5, *8, *9, *11.

Because of this posture, the Court found that it only needed to find that *some*

weapons parts kit could satisfy the definition of "firearm" under the GCA to

reject the entirety of the Petitioners' facial challenge to ATF's regulation. *See*

*id.* at *5 ("As the Fifth Circuit saw it, § 478.11's provisions addressing weapon

parts kits are facially invalid because no weapon parts kits can ever satisfy

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 4 of 12

the statute's two requirements.  We disagree because, to our eyes, at least some kits will satisfy both.").

*VanDerStok* thus forecloses the argument that no unfinished frames or receivers can ever be properly defined as "firearms" under the GCA. But, for purposes of this case, that is as far as the opinion goes. Given the nature of the Court's facial analysis, the majority explicitly did *not* address whether *all* unfinished frames or receivers qualify as firearms. *See id.* And the items the Court focused on to reject the facial challenge were not among the "more difficult questions" that may arise regarding such products. *Id.*; *see also id.* at *26 (Alito, J., dissenting) ("The Court points to a gun kit that is all-but-assembled, and a frame that is as close to completion as possible. As applied to those extreme situations, the Court holds—and I agree—the rule does not deviate from the statute." (citations omitted)).

The direct effect of that holding here is limited. The Defendant companies' defense against the State's attempt to impose retroactive civil liability is in no way a "facial" challenge to an ATF regulation. For this reason, the Court's focus on a test that upheld the regulation if *any* weapons parts kits properly qualified as a "firearm" hardly informs the questions in this appeal. Defendants' argument that the State must allege—and the District Court must analyze—*each* product claimed to be sold, remains entirely valid.

*See* Defs.' Opening Br., Doc. 79-1 at 27 (May 10, 2024) (noting that the district court relied on a single "zoomed-out" photo comparison of an unfinished frame and a finished one). That is true as well of the other elements necessary to demonstrate a violation of the GCA, such as the statutorily-required *mens rea*.

Importantly, however, the Court's reasoning also clarifies the notice issues presented by this lawsuit—brought by a State to impose retroactive civil liability following a *change* in the federal regulator's position on the relevant products. The Supreme Court repeatedly recognized that, "[i]n its 2022 rule, ATF sought to *expand* th[e] definition" of frames or receivers to include "a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit." *VanDerStok*, 2025 WL 906503, at *4 (citations omitted) (emphasis added); *see id.* at *11 (noting that "[w]ithout question, ATF's new rule seeks to regulate a greater variety of unfinished frames and receivers than the agency has in the past"). Justice Kavanaugh's concurrence puts this point in stark relief. He explained that "an individual or business acting in good faith might nonetheless have substantial difficulty determining when weapon parts kits or unfinished frames or receivers qualify as firearms—and thereby become subject to the Gun Control Act's licensing, recordkeeping, serialization, and background-

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 6 of 12

check requirements." *Id.* at *14 (Kavanaugh, J., concurring). And he emphasized the due process and fair notice concerns that would arise if someone faced enforcement despite being unaware that their conduct violated the law. *Id.*[1]

Those concerns are only heightened here. Not only does the State attempt to impose backward-looking liability following a *change* in the federal regulatory landscape. But it does so following repeated assertions by New York State officials that the GCA did not reach unfinished frames or receivers like those at issue. This is not merely a question of clarity going forward, but of private parties being haled into Court and threatened with massive penalties for *complying* with administrative guidance that was operative and valid at the relevant time. This Court should make clear that such liability may not be imposed on persons who followed such guidance.

---

[1] Justice Kavanaugh's brief discussion of the term "knowingly" in the context of *criminal mens rea*, *VanDerStok*, 2025 WL 906503, at *14 (Kavanaugh, J., concurring), does not inform the meaning of the term in the PLCAA, a civil immunity statute.

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 7 of 12

> **B.** ***VanDerStok*** **Did Not Address the PLCAA But Supports Defendants' Entitlement to PLCAA Immunity Because It Established that Some Weapons Parts Kits are "Firearms."**

*VanDerStok* did not address the other key issues remaining in this appeal. Namely, the Court did not address immunity under the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 *et. seq*. Defendants have argued throughout this litigation that even if all the products at issue in this case were properly defined as firearms, most defendants are guaranteed immunity from suit under the PLCAA.

The PLCAA was enacted to "prohibit civil liability actions from being brought or continued against manufacturers, distributors, dealers, or importers of firearms or ammunition for damages, injunctive or other relief resulting from the misuse of their products by others." *See* Protection of Lawful Commerce in Arms Act, Pub. L. No. 109-92, 119 Stat. 2095, 2095 (2005). The PLCAA plainly applies to insulate Defendants with a Federal Firearms License ("FFL") from New York's suit based on its alleged "public health and safety crisis caused by gun violence," which turns on the criminal misuse of Defendants' products by third parties. J. App., Doc. 80 at A-38 (May 10, 2024).

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 8 of 12

If anything, *VanDerStok bolsters* Defendants' claim of PLCAA immunity by establishing that some parts kits are properly defined as "firearms" under the GCA.[2] The PLCAA applies to sellers or manufacturers of a "qualified product." 15 U.S.C. § 7903(4). The term "qualified product," in turn "means a firearm," *as defined in the Gun Control Act*, "or a component part of a firearm . . . that has been shipped or transported in interstate or foreign commerce." *See id.* (citing 18 U.S.C. §§ 921(a)(3)(A)–(B)). To the extent there were any doubt that the FFL Defendants' products were "qualified products," so defined, *VanDerStok* resolved the question as to the types of parts the Court analyzed.

### C. The Supreme Court May Soon Clarify the Substantive PLCAA Issues, Which *VanDerStok* Did Not Address.

Although *VanDerStok* did not directly address the PLCAA, the Supreme Court will address, in a different case, the PLCAA issues that bear directly on this matter. In *Smith & Wesson Brands, Inc., et al. v. Estados Unidos Mexicanos*, No. 23-1141, the Supreme Court will address a lawsuit brought by the Mexican government to hold private firearm companies liable for public safety harms experienced in Mexico.

---

[2] Defendants preserve their argument that many of the unfinished frames or receivers at issue are not "firearms" under the GCA.

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 9 of 12

Mexico's effort is similar to New York's in critical respects, and the defendant companies in *Estados Unidos Mexicanos* have similarly argued that they are immune from civil liability under the PLCAA. *See* Pet'rs' Br. at 2, *Smith & Wesson Brands, Inc., et al. v. Estados Unidos Mexicanos* (U.S. Nov. 26, 2024) ("It is hard to imagine a suit more clearly barred by PLCAA."). Argument was held on March 4, 2025, and the Court's decision may issue within the next few months.[3]

There is no question that *Estados Unidos Mexicanos* bears directly on this case. Were there any doubt, the district court relied significantly on the First Circuit's decision that the Supreme Court agreed to review. *See* A-186, A-187 (quoting the decision extensively and citing the case five times); *see* Opening Br. at 55 ("For its contrary conclusion, the district court largely relied on an out-of-Circuit authority (citing *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024))). The Supreme Court will decide whether that decision—which denied PLCAA immunity and largely blessed Mexico's lawsuit—should be reversed. And regardless of the

---

[3] At the time of briefing and argument before this Court, the Supreme Court had not yet granted certiorari in *Estados Unidos Mexicanos See* 145 S. Ct. 116 (2024) (cert. granted Oct. 4, 2024); Defs.' Reply Br., Doc. 108.1 (July 31, 2024). Defendants' opening brief flagged the existence of a petition for certiorari in *Estados Unidos Mexicanos*. *See* Defs.' Opening Br., Doc. 79.1 at 55-56 (May 10, 2024) (citing cert petition).

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 10 of 12

ultimate outcome, the Court's holding and analysis is all but certain to inform how this Court should analyze and resolve New York's analogous effort to place legal blame on private firearm companies for an alleged public safety crisis.

Accordingly, in the alternative to reversing the district court, this Court should hold this appeal in abeyance pending the Supreme Court's decision in *Estados Unidos Mexicanos*.

### D. *VanDerStok* Did Not Impact Defendants' Jurisdictional Arguments.

Finally, *VanDerStok* in no way impacts the portion of this appeal related to this Court's jurisdiction to hear an interlocutory appeal from the denial of PLCAA immunity.

### CONCLUSION

This Court should reverse the district court or, in the alternative, hold the appeal in abeyance pending the Supreme Court's guidance on the PLCAA issues in *Estados Unidos Mexicanos*.

Sincerely,

s/Brian W. Barnes
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 11 of 12

bbarnes@cooperkirk.com
Tel: (202) 220-9600
Fax: (202) 220-9601
*Attorney for Defendants-Appellants Brownells, Inc., a/k/a Brownells or Bob Brownell's; Salvo Technologies, Inc., a/k/a 80P Builder or 80P Freedom Co.; Primary Arms, LLC; and Rock Slide USA, LLC*

Jonathan Y. Ellis
MCGUIREWOODS LLP
501 Fayetteville St.
Suite 500
Raleigh, NC 27601
919-755-6688
jellis@mcguirewoods.com

Jason Cowley
MCGUIREWOODS LLP
201 North Tryon Street
Suite 3000
Charlotte, NC 28202
704-343-2030
jcowley@mcguirewoods.com

Jean Paul Bradshaw, II
LATHROP GPM LLP
2345 Grand Blvd., Ste. 2200
Kansas City, MO 64108-2612
816-460-5507
Fax: 816-292-2001
jeanpaul.bradshaw@lathropgpm.com

V.R. Bohman
Cameron J. Schlagel
SNELL & WILMER L.L.P.
1700 S Pavilion Center Dr. #700
Las Vegas, NV 89135
Tel: 702-784-5200
Fax: 702-784-5252
*Attorneys for Blackhawk Manufacturing Group, Inc.*

Steven Jay Harfenist
HARFENIST KRAUT & PERLSTEIN, LLP
3000 Marcus Avenue
Suite 2e1
Lake Success, NY 11042
516-355-9600
Fax: 516-355-9601
sharfenist@hkplaw.com
*Attorney for Arm or Ally LLC*

Ms. Catherine O'Hagan Wolfe
April 9, 2025
Page 12 of 12

Shoshanah Mae Shanes
LATHROP GPM LLP
190 Carondelet Plaza
Suite 1400
Clayton, MO 63105
314-613-2846
Fax: 314-613-2801
shoshanah.shanes@lathropgpm.com

Tobias Jacob Fischer
MCGUIREWOODS LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020
212-548-2143
tfischer@mcguirewoods.com
*Attorneys for KM Tactical*

Ryan Lawrence Erdreich
Richard Frederick Brueckner, Jr.
PISCIOTTI LALLIS ERDREICH
30 Columbia Turnpike
Suite 205
Florham Park, NJ 07932
973-245-8100
rerdreich@pisciotti.com
rbrueckner@pisciotti.com
*Attorneys for GS Performance, LLC,*
*a/k/a Glockstore or GSPC*

Christopher Adams
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
973-639-2059
cadams@mccarter.com
*Attorney for Rainier Arms, LLC*

CC: All Counsel of record via electronic filing