

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

April 9, 2025

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

  Re: *People of the State of New York v. Arm or Ally, LLC*,
     Nos. 24-773(L), 24-1497

Dear Ms. Wolfe:

Plaintiff-respondent People of the State of New York, by Letitia James, Attorney General (OAG) submits this supplemental letter brief pursuant to this Court's October 3, 2024, order requesting that the parties "address[] the effect that the *VanDerStok* decision has on this appeal." (ECF No. 127.1.)

On March 26, 2025, the U.S. Supreme Court held that at least some weapon parts kits and unfinished frames or receivers constitute firearms subject to federal background-check, serialization, and recordkeeping requirements, as defined by 18 U.S.C. § 921(a) and 27 C.F.R. §§ 478.11,

478.12(c). Such covered firearms include products that the complaint in this case alleges were sold by defendants-appellants to persons in New York. *See Bondi v. VanDerStok*, No. 23-852, 2025 WL 906503 (Mar. 26, 2025).

As explained below, that holding has substantial consequences both for this Court's appellate jurisdiction, and for the merits of this appeal. In light of *VanDerStok*, this Court should remove the appeal from abeyance and either (i) dismiss the appeal for lack of appellate jurisdiction, or (ii) affirm the district court's decision on the merits.

## I. The U.S. Supreme Court's Decision in *VanDerStok*

As explained in appellee's principal brief (at 5-8), the federal Gun Control Act of 1968 (GCA) imposes various requirements on the sale and transfer of firearms to "keep guns out of the hands of criminals and others who should not have them" and "to assist law enforcement authorities in investigating serious crimes." *Abramski v. United States*, 573 U.S. 169, 180 (2014). As relevant here, the GCA defines "'firearm'" to include "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," 18 U.S.C. § 921(a)(3)(A), as well as "the frame or receiver of any such weapon," *id.* § 921(a)(3)(B).

2

In 2022, the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) promulgated a rule interpreting the statutory term "firearm" to include "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive," and interpreting the statutory term "frame or receiver" to include a "partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver." *See* 27 C.F.R. §§ 478.11, 478.12(c).

Several plaintiffs brought a facial challenge to the rule, arguing that the statutory terms "firearm" and "frame or receiver" cannot be read to apply to any kit containing weapon parts or an unfinished frame or receiver. The U.S. District Court for the Northern District of Texas (O'Connor, J.) and the U.S. Court of Appeals for the Fifth Circuit agreed and ordered the rule to be vacated, but the U.S. Supreme Court granted ATF's application for an emergency stay of the judgment and then granted a petition for a writ of certiorari. *See Garland v. VanDerStok*, 144 S. Ct. 44 (2023) (mem.); *Garland v. VanDerStok*, 144 S. Ct. 1390 (2024) (mem.).

On review of the merits, the Supreme Court reversed the Fifth Circuit and upheld the facial validity of the ATF's statutory interpretation in a 7-2 decision. *VanDerStok*, 2025 WL 906503, at *2, 12.

First, the Court, in an opinion by Justice Gorsuch, held that the statutory definition of "firearm" can include weapon parts kits, including Polymer80's "Buy Build Shoot" kit which "featured prominently in the record." *Id.* at *6. The Court explained that § 921(a)(3)(A)'s definition of "firearm" uses the term "weapon" as an artifact noun, and such nouns include "refer[ence] to unfinished objects—at least when their intended function is clear." *Id.* Although "perhaps a half hour of work is required before anyone can fire a shot," the Buy Build Shoot kit "comes with all necessary components, and its intended function as instrument of combat is obvious." *Id.* The Court also observed that the "firearm" definition expressly includes weapons that are either "designed" to expel a projectile or are "capable of being 'readily . . . converted' to do so." *Id.* at *7 (quoting 18 U.S.C. § 921(a)(3)(A)). The Court found that some weapon parts kits, including the Buy Build Shoot kit, also satisfy this readily converted standard because they require "no more time, effort, expertise, or specialized

4

tools to complete" than a starter gun, which is also expressly included in the statutory definition of "firearm." *Id.* at *7.

Second, the Court held that § 921(a)(3)(B)'s definition of "frame or receiver" likewise encompasses at least some "'partially complete' frames or receivers," including those sold by Polymer80. *Id.* at *9 (quoting 27 C.F.R. § 478.12). The Court again noted the artifact nature of the statutory terms and pointed to a separate provision of the GCA that expressly "encompass[es] some unfinished and unconventional frames or receivers," concluding that Congress would have wanted a uniform interpretation to apply throughout a single statute. *Id.* at *10.

Accordingly, the Court concluded that plaintiffs' facial challenge to the validity of ATF's statutory interpretation must fail. *Id.* at *11. As the Court explained, "even if ambiguities at the outer boundaries of subsections (A) and (B) emerge in future disputes involving the application of those provisions to particular products, no room for doubt exists about . . ." whether "[t]he GCA embraces, and thus permits ATF to regulate, some weapon parts kits and unfinished frames or receivers, including those we have discussed." *Id.* at *12. The Court left to "[f]uture cases" the question

5

of when a particular kit or unfinished frame or receiver is so incomplete as to no longer constitute a weapon. *Id.* at *7-8.

## II. This Court Should Dismiss the Appeal for Lack of Jurisdiction

The decision in *VanDerStok* confirms the jurisdictional flaws in each of the theories by which defendants' seek to pursue this interlocutory appeal. Several reasons support dismissal of this appeal for lack of jurisdiction.

First, the district court concluded that certification of interlocutory appeal under 28 U.S.C. § 1292(b) was appropriate to determine whether the complaint adequately alleged that defendants' products constituted "firearms" under federal law. (Op. & Order at 4-10 (May 20, 2024), S.D.N.Y. ECF No. 269.) The answer following *VanDerStok* is indisputably "yes." See *infra* at 9-11. Defendants' motion asking this court to grant the petition for appeal authorized by that certification remains pending. Order, *Arm or Ally, LLC v. New York*, No. 24-1497 (2d Cir. June 20, 2024), ECF No. 41.1. Whether or not that question warranted certification at the time of the district court's ruling, *VanDerStok* has now definitively answered that question, and therefore it cannot now constitute an open

6

question of law whose resolution would materially advance termination of this litigation. See *infra* at 9-11.

There is no basis for this Court to take the exceptional step of certifying an interlocutory appeal under § 1292(b) as to the remaining question in the case: whether the district court properly denied defendants' motions to dismiss certain claims based on the Protection of Lawful Commerce in Arms Act (PLCAA). (*See* S.D.N.Y. ECF No. 269 at 11-14.) As appellees previously explained (Br. for Appellee at 57-59; Resp't's Mem. in Opp'n to Pet. to Appeal at 21-24, No. 24-1497 (June 11, 2024), ECF No. 32.1), the question of whether PLCAA precludes a subset of OAG's claims is neither controlling nor does it present a substantial difference of opinion. Indeed, the district court was clear that in its view the PLCAA-related question did not warrant an interlocutory appeal. (*See* S.D.N.Y. No. 269 at 11-14.) Accordingly, *VanDerStok* has removed the only arguably appeal-worthy question of law and requires dismissal of defendants' petition for interlocutory appeal under § 1292(b).

Second, *VanDerStok* also demonstrates that defendants' PLCAA-related challenge is not appropriate for interlocutory review under the collateral-order doctrine. As defendants admit (Br. for Def.-Appellant at

7

20-21, Reply Br. for Def.-Appellant at 9), any defense that may be available under PLCAA would apply only to the extent defendants' products are firearms (or components thereof), and courts cannot resolve the question of whether any particular product satisfies the federal definition of "firearm" in the context of a sweeping facial challenge. *VanDerStok*, 2025 WL 906503, at *8; *see also id.* at *13 (Sotomayor, J., concurring). As discussed previously (Br. for Appellee at 63-67), the alleged PLCAA defense is also inappropriate for collateral-order review because the denial of a motion to dismiss under PLCAA is not akin to the denial of an immunity from suit unreviewable after final judgment.

Finally, there is no basis for this Court to continue to hold this appeal in abeyance pending the Supreme Court's forthcoming decision in *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, No. 23-1141. That case has no bearing on the jurisdictional questions pertaining to PLCAA, and the Court's application of PLCAA to allegations involving the sale of firearms to drug cartels in Mexico will in no way dispose of any of OAG's claims in this case. To the extent the Supreme Court elaborates on the meaning of certain terms in PLCAA, the district court

is more than capable of determining in the first instance how such a decision applies to this case.[1]

## III. *VanDerStok* Confirms That the Complaint Alleges Violations of Federal Law

If, contrary to the argument above, this Court retains this appeal and reaches the merits, it should affirm the decision below because *VanDerStok* conclusively resolves the question of whether the complaint adequately pleaded that at least some of the kits sold by defendants are firearms under federal law.

To begin with, the complaint expressly alleges that defendants sold the same Polymer80 products that were expressly referred to in *VanDerStok* as exemplar kits satisfying the federal definition of "firearm." (*See* Joint Appendix (J.A.) 70, 97, 117-118, 134-135, 138.) These allegations alone are sufficient to support the district court's decision denying the motion to dismiss.

Moreover, as explained in appellee's principal brief (at 34-38), the complaint alleges that the products sold by defendants satisfy the federal

---

[1] By contrast, further delay in the resolution of this case would be deeply prejudicial to OAG, as this enforcement action was filed nearly three years ago and has still not proceeded to discovery.

definition of "firearm" for many of the same reasons identified in *VanDerStok*. For example, OAG's complaint alleges that defendants' products were designed to create firearms that are functionally and visually indistinguishable from popular weapons platforms such as the frames of Glock pistols, or the receivers of AR-9, AR-15, or AK-47 rifles. (J.A. 43, 45, 52-53.) The complaint also alleges that the products "can be converted into . . . working gun[s] in under thirty minutes" by someone with prior experience and in under an hour by an amateur (J.A. 45), in part because the requisite finishing "amount[s] to having to drill three small holes and milling down a small amount of plastic at the top of the frame" (J.A. 46). These are some of the same considerations that led the Court in *VanDerStok* to conclude that the GCA's statutory definitions encompass weapon parts kits and unfinished frames or receivers. *See* 2025 WL 906503, at *6-8, 10-11.

On remand, defendants may well argue that some of the products they sold were "so incomplete or cumbersome to assemble" as to no longer constitute a weapon, *VanDerStok*, 2025 WL 906503, at *8, or "so far from a finished frame or receiver that they cannot fairly be described using those terms," *id.* at *11. However, such fact-based arguments cannot be

the basis to prevail on a motion to dismiss, especially when the complaint's allegations draw expressly on statements made by defendants themselves about the ease with which their products can be converted into operable weapons. (*See, e.g.,* J.A. 49, 52-53, 70.)

                              Respectfully submitted,

                              Barbara D. Underwood
                                *Solicitor General*
                              Ester Murdukhayeva
                                *Deputy Solicitor General*

                            */s/ Kwame N. Akosah*

                            Kwame N. Akosah
                            *Assistant Solicitor General*

cc:    All Counsel

      (via ECF)

11